DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellants, Bryan Weber, at al., (Appellant) appeal the decision of the Medina County Court of Common Pleas adopting the findings of fact, conclusions of law and recommended damages as set forth by the Magistrate. We affirm in part, reverse in part, and remand.
 {¶ 2} Appellant purchased an undeveloped lot in 1997 for $40,000. Appellee, Constance Obuch, inherited the property adjacent to Appellant's property from her husband in 1997. Appellee's property had been used as a gasoline service station and automotive repair garage. Appellant encountered a variety of problems with his neighbors which led to the commencement of the instant lawsuit. On May 6, 2003, Appellant filed a complaint alleging nuisance, trespass, environmental damage, petroleum release, and intentional infliction of emotional distress. Appellant sought both monetary damages and injunctive relief.
 {¶ 3} Appellees (Constance Obuch, individually and as Executrix of the estate of William Obuch, and her son, Robert Obuch) did not answer Appellant's complaint. The Magistrate found that, due to Appellees' failure to respond, various averments in Appellants' complaint were deemed to have been admitted under Civ.R. 8(D). We adopt the Magistrate's findings of fact as follows:
"[D]ecedent, William Obuch, caused contamination of Weber's property; that underground storage tanks on Obuch's property leaked pollutants into the soil of Weber's lot, resulting in a soil saturation level above acceptable limits; that [Appellees] have not taken any corrective action to remedy the problem; that the underground storage tanks pose a health risk and a risk to environmental safely; that both [Appellees] have participated jointly in contributing to the creation of a hazardous nuisance; that Constance Obuch and her son Robert Obuch dumped debris and junk on their property, creating a nuisance."
 {¶ 4} On February 6, 2004, the Medina County Court of Common Pleas issued an order of default judgment against Appellees. The case proceeded to a bench trial on the issue of damages before Magistrate Barbara Porzio on January 24, 2005. The Magistrate recommended an award in favor of Appellant to be granted in the amount of $2,927.50 and denied Appellant's request for injunctive relief.
 {¶ 5} Appellant filed an un-opposed objection to the Magistrate's decision on March 30, 2005. On May 11, 2005, Judge James L. Kimbler overruled all of Appellant's objections and adopted in full the Magistrate's decision, including the findings of fact and conclusions of law.
 {¶ 6} Appellant now appeals the decision of the trial court, asserting ten assignments of error for our review. Initially, we note that no Appellee's brief was filed. Accordingly, we may "accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." App.R. 18(C).
 ASSIGNMENT OF ERROR I
"The trial court erred by refusing to correct a clerical error."
 {¶ 7} In his first assignment of error, Appellant maintains that the Magistrate incorrectly added the four figures that she had used to calculate the damages, and the trial court thereafter erred in failing to correct the plain error.
 {¶ 8} In its objections to the magistrate's decision, Appellant brought to the attention of the trial court a clerical mathematical error made by the Magistrate in calculating Appellant's damages. Appellant argues that the trial court erred in failing to correct the plain error. The Ohio Supreme Court has explained that a reversible plain error requires that: (1) there must be an error, i.e., a deviation from a legal rule; (2) the error must be plain, which means that it must be an obvious defect in the trial proceedings; and (3) the error must have affected substantial rights, which means that the trial court's error must have affected the outcome of the trial. State v.Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, at ¶ 62, citing Statev. Barnes, 94 Ohio St.3d 21, 27.
 {¶ 9} In the case at hand, the Magistrate added $565.00 for Excavating, $1510.00 for T.S. Snyder Corporation, $427.50 for Don Dobson, and $1785.00 for re-seeding and found that the sum of those four figures was total of Appellant's damages. Incorrectly, the total was recorded as $2927.50. When the four above figures are added, the correct total is $4287.50.
 {¶ 10} As the error mentioned was a plain mathematical error which affected Appellant's recovery, we uphold Appellant's first assignment of error and remand for the lower court to correct the error.
 ASSIGNMENT OF ERROR II
"The trial court erred by finding that the costs associated with chemical testing of [Appellant's] property were not recoverable."
 {¶ 11} In his second assignment of error, Appellant maintains that the trial court erred in upholding the Magistrate's decision excluding an award for diagnostic testing. We reverse, in part, the decision of the lower court.
 {¶ 12} We note that "[t]he measure of damages for tort harm to land is the same whether the theory of recovery is trespass, nuisance, negligence, or strict liability." Francis Corp. v. SunCo., Inc. (Dec. 23, 1999), 8th Dist. No. 74966, at 1. Thus, Appellant is entitled to recover "reasonable restoration costs, plus the reasonable value of the loss of use of the property between the time of the injury and the time of restoration."Bohaty v. Centerpointe Plaza Associates Ltd. Partnership (Feb. 20, 2002), 9th Dist. No. 3143-M at 6, citing Reeser v. WeaverBros., Inc. (1992), 78 Ohio App.3d 681, 691-692.
 {¶ 13} Appellant submitted two invoices at trial, one for $242.70, and the other for $2090.30, representing the costs associated with diagnostic testing. The Magistrate found that the invoices, dated February 15, 2000, and October 31, 2000, were not recoverable because the costs were incurred in preparation of litigation. Costs incurred in preparation for litigation are generally not recoverable as damages in a tort action.
 {¶ 14} Appellant argues that the Magistrate erred in finding that the costs for diagnostic testing, conducted three years before he filed the instant complaint, were costs incurred in preparation for litigation. Appellant testified he had planned on constructing a building on his property. When he contacted his bank for a loan, the bank told him that he needed to do "an EPA Phase I" environmental test. Appellant stated that he hired Leedar Environmental, an environmental engineering company, to conduct the test, per the bank's loan prerequisites. Mr. Sturgill, a former bank employee and an assessment expert, testified that in his experience, a Phase II environmental inspection would only be required when the Phase I inspection required by the bank shows signs of contamination on the property.
 {¶ 15} It is a plaintiff's burden to prove causation between the damages claimed and the tort. Thus, Appellant would be entitled to recover the costs of the diagnostic testing if he were able to show that the costs were incurred for the restoration of his property. In the instant case, evidence was presented showing that the Phase I portion of the diagnostic testing was done at the request of the bank. Appellant did not demonstrate a connection between the tort and the Phase 1 diagnostic testing cost. Consequently, Appellant is not entitled to recover the costs of the Phase I diagnostic testing.
 {¶ 16} A Phase II environmental test is required not simply as a loan prerequisite, but only when the Phase I test demonstrates that the property in question may be contaminated, explained Mr. Sturgill. If Appellant's property was not contaminated, he would not have had to have a Phase II test. In this case, the Phase I showed contamination, thus Phase II was required which involved taking bore samples. Appellant would not have had to bear the costs associated with Phase II testing had Appellees not contaminated his property.
 {¶ 17} The finding that the environmental testing was done in preparation for litigation is not supported by even an iota of evidence. This Court will not reverse the judgment of a trial court in a civil case unless it is unsupported by some competent, credible evidence. C.E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279, syllabus. In the case at hand, the only evidence presented shows that the testing was done in part, at the request of the bank, and in part as a result of the trespass. Accordingly, we affirm Appellant's second assignment of error, reverse the trial court's finding that the costs associated with the environmental testing are not recoverable, and remand for a determination of what portion of the testing costs were incurred as a result of Appellees' trespass.
 ASSIGNMENT OF ERROR III
"The trial court erred by finding that [Appellees] did not drive onto [Appellant's] property or cause others to do so, which finding was against the manifest weight of the evidence."
 {¶ 18} In his third assignment of error, Appellant states that "the Magistrate (wrongfully) impli[ed] that the evidence produced by [Appellants] does not conclusively establish that [Appellees] trespassed onto their property." While Appellant asserts that the trial court erred in adopting the Magistrate's finding, he does not mention how or in what way he suffered prejudice as a result of the alleged error. App.R. 12(D) provides that a judgment of final order of a trial court may be reversed upon a finding that Appellant suffered prejudice as a result of the assigned error. In this case, Appellant has not argued that he was prejudiced by the trial court's alleged error, thus, under App.R. 12(D), we will not reverse the judgment of the trial court. Appellant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR IV
"The trial court erred by finding that the entire cost of a curb was not recoverable, which finding was against the manifest weight of the evidence."
 {¶ 19} In his fourth assignment of error, Appellant maintains that it was against the manifest weight of the evidence for the trial court to adopt the Magistrate's conclusions that the entire cost of the curb was not a reasonable cost incurred to prevent Appellees' encroachment onto Appellant's property.
 {¶ 20} In determining whether a judgment is against the manifest weight of the evidence:
"[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment]." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 21} Whether the curb, in its entirety, was a reasonable cost to prevent Appellees from entering Appellant's property, is a question of fact. This Court will not reverse the trial court's findings of fact if they are supported by some competent and credible evidence in the record. Jaroch v. Madalin, 9th Dist. No. 21681, 2004-Ohio-1982, at ¶ 8.
 {¶ 22} Appellant testified that "the curb that was built [was] to stop the ingress and egress" onto his property from Appellees. He further stated that the curb "runs along the front of the lot * * * all the way down the property line. Basically it is a big L * * * to keep people out, and it is a lot higher than the standard curb so you couldn't drive a truck over it."
 {¶ 23} Based on the above evidence, the Magistrate found that "[Appellant] acted reasonably when he had the curb installed[.]" The Magistrate further found that only a portion of the curb was necessary to keep Appellees out of Appellant's property and awarded damages representing the cost of that portion. After having reviewed the record, we find no evidence supporting the finding that only a portion of the curb was necessary. Appellees did not contest the cost of the curb, its necessity, in whole or in part, nor was any evidence presented indicating that only a portion of the curb was necessary. As such, the Magistrate's finding that only a portion of the curb was necessary is not supported by any competent and credible evidence. We reverse the finding of fact that only a portion of the curb was recoverable and remand for the award of damages to be adjusted accordingly.
 ASSIGNMENT OF ERROR V
"The trial court erred by finding that [Appellants] were not entitled to compensation for their loss of use of their property."
 {¶ 24} In his fifth assignment of error, Appellant argues that the trial court erred in finding that he was not entitled to damages for loss of use of his property. We affirm the decision of the trial court.
 {¶ 25} The proper measure of damages for injury to real property is the cost of restoration, plus the reasonable value of the loss of the use of the property between the time of the injury and the restoration. Ohio Collieries Co. v. Cocke
(1923), 107 O.S. 239. "The value of the use of the property is measured according to the purpose for which the property is held. If the injured property is held for rental purposes, then the `value of the use' is the diminution in the property's rental value." Reeser v. Weaver Bros., Inc. (1992),78 Ohio App.3d 681, 686, citing Klein v. Garrison (1951), 91 Ohio App. 418,420-427. Loss or decrease in rental value would not be a reliable basis upon which to estimate damages if the property is not held for rental purposes, rather, loss of the value of use would be the measure of damages. Id.
 {¶ 26} In the case at hand, the property is a vacant, unimproved plot of land. It has not been used as rental property, nor was it held for personal use. Appellant seeks loss of use damages in the amount of anticipated rental income that he had believed he would receive after he constructed a building on the property.
 {¶ 27} Appellant testified that he had been set to build on his property in 1998. He testified that the finished product would have been 8,000 square feet and would have cost around $700,000.00. Appellant stated that he had anticipated to be paid rent in an amount "around $8 a square foot," for a total of $64,000.00 a year. Appellant seeks damages from the past seven years in the amount of $448,000 for loss of use of his property.
 {¶ 28} Recovery for loss of use of property places the burden of establishing the loss on the complaining party. See, generally, Reeser, 78 Ohio App.3d at 686. Under Ohio law, a party cannot recover purely speculative damages. Mid-AmericaTire, Inc. v. PTZ Trading Ltd. (2002), 95 Ohio St.3d 367,2002-Ohio-2427; see, also, Agarwal v. Mulligan, 9th Dist. No. 22021, 2004-Ohio-4574.
 {¶ 29} In the case at hand, loss of rent damages are too speculative, thus the trial court did not err in declining to award them. Appellant did not establish that he definitely would have rented out all of the space; he did not establish that he would have collected rent for each of the 8,000 square feet of anticipated commercial space each month. Appellant did not set forth that he knew with any degree of certainty the types of tenants that he would have, how many tenants he would have, how many units would be built, nor did he establish that all of the tenants, or even some of them, would pay the anticipated $8 per square foot in rent per month. Appellant did not establish that the building project definitely would have been finished by a certain time, or even when the building project would have started. Based on the above, we find loss of use damages too speculative and decline to overrule the trial court on that matter. Thus, we overrule Appellant's fifth assignment of error.
 ASSIGNMENT OF ERROR VI
"The trial court erred by finding that [Appellants] were not entitled to compensation for the depreciation in value of their property, which finding was against the manifest weight of the evidence."
 {¶ 30} Appellant claims, in his sixth assignment of error, that it was in error for the trial court to decline to award him damages for the depreciation in value of his property. We reverse and remand the decision of the trial court.
 {¶ 31} As we stated above, in an action to recover damages for injury to real property, a landowner is entitled to recover reasonable restoration costs, plus the reasonable value of the loss of use of the property between the time of the injury and the time of restoration. Reeser, 78 Ohio App.3d at 691-692. Recovery under this rule necessarily places the burden of establishing the diminution in market value on the complaining party. Id. at 686.
 {¶ 32} Typically, expert testimony is needed to establish the value of property. Tokles Son Inc. v. Midwestern Indemn. Co.
(1992), 65 Ohio St.3d 621, 625. For the purposes of establishing the value of his property, Appellant introduced the expert testimony of Mr. Sturgill. Even after the Magistrate specifically asked if there were any objections to Mr. Sturgill's qualifications as an expert witness, no objections were made as to his expertise in assessing the value of the property.
 {¶ 33} Mr. Sturgill testified that unencumbered, the property in question would be worth $80,000. As the property is now, he testified that he valued it at $40,000. Mr. Sturgill based his assessment on a multitude of things, including an estimate from Krieger and Associates as to how much it would cost to clean up the property. The Magistrate determined that since that report was not attached to the complaint and since no one from Krieger and Associates testified as to the findings set forth in the report, that it was inadmissible hearsay and as such, not afforded any weight. Thus, the Magistrate entirely disregarded Mr. Sturgill's testimony and valuations of the property since a portion of his analysis was based in part on the Krieger report.
 {¶ 34} Notably, there were no objections to the expert's reliance on the Krieger report; no one objected at the hearing that the report was hearsay, that it should not be relied upon, or that it should not be afforded any weight. The Krieger report placed a value of $15,000 as the cost of the clean up of the property. Mr. Sturgill testified that the loss of value that Appellant suffered was $40,000. Even if the Magistrate were to have entirely discounted the Krieger report, and subtracted that portion of the damages from Mr. Sturgill's assessment of damages, Appellant would still be entitled to $25,000.00 in damages.
 {¶ 35} Appellant introduced evidence demonstrating that he had suffered a loss of value of his property. No evidence was introduced contradicting his assertion that he suffered a loss of value of his property, and no objections were made as to his expert's assessment of the loss. Thus, we find that Appellant met his burden in establishing that the market value of his property had decreased. See Reeser, 78 Ohio App.3d at 686. As Ohio case law is clear that a property owner is entitled to the difference in the market value of the property before and after the injury, and Appellant established that there was a difference in the market value of the property before and after the injury, the Magistrate erred in entirely disregarding the testimony on that issue and in declining to award any damages. See Reeser, supra,Ohio Collieries, 107 Ohio St. at 247; Cranfield v. Lauderdale
(1994), 94 Ohio App.3d 426, 428; Henderson v. Spring RunAllotment (1994), 99 Ohio App.3d 633, 640-641.
 {¶ 36} Consequently, we affirm Appellant's sixth assignment of error and remand for the lower court to properly determine damages.
 ASSIGNMENT OF ERROR VII
"The trial court erred in not awarding punitive damages, which finding was against the manifest weight of the evidence."
 {¶ 37} R.C. 2315.21 governs the recovery of punitive and exemplary damages in tort actions. For a plaintiff to recover punitive damages in a tort action, the plaintiff must show by clear and convincing evidence that
"[t]he actions or omissions of [the] defendant demonstrate malice, aggravated or egregious fraud, oppression, or insult, or that defendant as principal or master authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate[.]" R.C. 2315.21(B)(1) and (C)(3).
 {¶ 38} Actual malice, necessary for an award of punitive damages, is defined as: "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Preston v. Murty (1987), 32 Ohio St.3d 334, syllabus.
 {¶ 39} In reviewing an award of damages, an appellate court does not re-weigh the evidence, but rather determines whether the lower court's award was supported by any competent and credible evidence. Day v. Clifford (Aug. 24, 1993), 4th Dist. No. 499, at 7. In the case sub judice, the Magistrate found, and the trial court affirmed, that Appellant had not presented sufficient evidence to supporting an award of punitive damages.
 {¶ 40} We find the trial court did not err by refusing to award punitive damages to Appellant. Our review of the record supports the trial court's conclusion that Appellant did not sufficiently establish evidence of Appellees' malice or conscious disregard for the rights and safety of others. Accordingly, we overrule Appellant's seventh assignment of error.
 ASSIGNMENT OF ERROR VIII
"The trial court erred by not awarding attorney fees."
 {¶ 41} In his eighth assignment of error, Appellant argues that the trial court erred by denying his request for attorney fees. We affirm the decision of the trial court.
 {¶ 42} In Ohio, each party is responsible for their own attorney's fees except as provided for in certain statutory actions or when the opposing party is found to have acted maliciously. Sorin v. Bd. of Edn. (1976), 46 Ohio St.2d 177,180-81; Digital Analog Design Corp. v. North Supply Co.
(1992), 63 Ohio St.3d 657, 662; Civ.R. 54(D). As Appellant has not cited to a statute which provides for an award of attorney fees under the facts of the underlying case, and as we did not find that Appellant demonstrated actual malice on behalf of Appellee, we overrule Appellant's eighth assignment of error. SeeFox v. Williams (May 28, 1996), 4th Dist. No. 95CA38 at 3 ("Without a finding of malice and the award of punitive damages, [Appellant] cannot justify the award of attorney fees[.]")
 ASSIGNMENT OF ERROR IX
"The trial court erred by not granting [Appellants] an award for damages for intentional infliction of emotional distress."
 {¶ 43} In his ninth assignment of error, Appellant maintains that the trial court erred in failing to award damages on his claim for intentional infliction of emotional distress. We disagree.
 {¶ 44} To prevail on an intentional infliction of emotional distress claim, a party must show that:
"(1) the defendant intended to cause emotional distress, knew or should have known his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychic injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a mature that no reasonable man could be expected to endure." McPherson v. Goodyear Tire Rubber Co.,
9th Dist. No. 21499, 2003-Ohio-7190, at ¶ 33, citing Burkes v.Stidham (1995), 107 Ohio App.3d 363, 375.
 {¶ 45} The Supreme Court of Ohio noted that "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not create liability on a claim of intentional infliction of emotional distress. Yeager v. Local Union 20
(1983), 6 Ohio St.3d 369, 375, quoting Restatement of the Law 2d, Torts (1965) 73, Section 46, comment d. "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'" Id.
 {¶ 46} As a preliminary matter, a trial court makes the threshold determination of what constitutes `outrageousness' as a matter of law. Jarvis v. Gerstenslager Co., 9th Dist. Nos. 02CA0047 and 02CA0048, 2003-Ohio-3165, at ¶ 69, citing Binns v.Fredendall (1987), 32 Ohio St.3d 244, 245, n. 1.
 {¶ 47} In the case at hand, the Magistrate found that Appellant had not established a claim for intentional infliction of emotional distress and declined to award damages. Appellant argues that the Magistrate was charged merely with the duty of determining damages, and as the averments in Appellant's complaint were deemed admitted (intentional infliction of emotional distress being one of them), it was improper for the Magistrate to find that the cause of action was not established.
 {¶ 48} The issue of whether the Magistrate was acting outside of her authority is moot in light of the fact that the issue of damages was properly before her and Appellant did not introduce any damages attributable to his claim of intentional infliction of emotional distress. Compensable emotional injuries stemming from a claim of intentional infliction of emotional distress "are those that are severe and debilitating to a reasonable person."Meyers v. Hot Bagels Factory, Inc. (1999), 131 Ohio App.3d 82,94. As Appellant failed to show that he had compensable emotional injuries, the Magistrate correctly found that monetary damages were not attributable to Appellant's claim of intentional infliction of emotional distress.
 {¶ 49} In light of the fact that Appellant failed to show resulting damages, the trial court did not err in adopting the Magistrate's decision declining to award damages on Appellant's claim. Accordingly, we overrule Appellant's ninth assignment of error.
 ASSIGNMENT OF ERROR X
"The trial court erred by not granting [Appellants] injunctive relief."
 {¶ 50} In his tenth, and final, assignment of error, Appellant maintains that the trial court erred in denying his request for injunctive relief. We disagree with Appellant.
 {¶ 51} The decision to grant or deny an injunction is solely within the discretion of the trial court. Danis Clarkco LandfillCo. v. Clark Cty. Solid Waste Mgt. Dist. (1995),73 Ohio St.3d 590, paragraph three of the syllabus. An appellate court cannot reverse that decision absent an abuse of discretion. Id. An abuse of discretion is more than merely an error. It must involve "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 52} In addition to the instant case, Appellees have been sued twice by Valley City and Liverpool Township. In those cases, Appellees were "ordered to comply with the zoning codes of Valley City and to remove any debris which may be causing a danger to firefighters or other members of the community." Based on the court's orders in the above mentioned cases, the Magistrate determined that "there should be no additional injunctive relief ordered in this case, for fear of issuing a conflicting order."
 {¶ 53} Appellant argues that the two previously entered injunctions do not address all of the issues to which he complains. The two orders, however, are not part of the record before this court, thus we cannot determine the substance of the previously entered injunctions. It is the burden of the Appellant to demonstrate error on appeal. Pennant Molding, Inc. v. C JTrucking Co. (1983), 11 Ohio App.3d 248, 251. Furthermore, Appellant has the responsibility of providing this Court with a record of the facts that are necessary to support his allegation of error. Volodkevich v. Volodkevich (1989),48 Ohio App.3d 313, 314; see, also, App.R. 16(A)(7), Loc.R. 7(A)(7). As we do not have the two other orders before us, we cannot say that the lower court erred in finding that the two other orders made Appellant's injunctive order unnecessary. Accordingly, we overrule Appellant's tenth assignment of error.
 {¶ 54} In conclusion, Appellant's first, second, fourth, and sixth assignments of error are affirmed, his third, fifth, seventh, eighth, ninth and tenth assignments of error are overruled. The judgment of the trial court is affirmed in part, reversed in part, and remanded.
Judgment affirmed in part, reversed in part, and cause remanded
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
Exceptions.
Moore, J., Baird, J., Concur.