DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant, Jeff Wittman, appeals from the jury's verdict in the Summit County Court of Common Pleas, awarding judgment to Plaintiff-Appellee, John Howell. This Court affirms.
 I {¶ 2} On July 7, 2004, Howell received a phone call from his friend, Tara Kester, inviting him over to her home for a party. At approximately 10:00 p.m., Howell began to walk over to Kester's home. Since Wittman's property abutted *Page 2 
the Kester home, Howell decided to take a short cut over the corner of Wittman's land. Howell later testified that this was the first time that he had ever set foot on Wittman's property and that he had never met Wittman before this night.
 {¶ 3} The trouble started before Howell could reach the Kester property. According to Howell, Wittman began screaming at him to leave his property, threw a beer bottle at him, and physically attacked him. According to Wittman, Howell jumped up on Wittman's porch and began the fight in which both parties were injured. Howell fled the Wittman property immediately after the fight and proceeded to Kester's home. Shortly thereafter, the police interviewed both Howell and Wittman about their roles in the altercation. Howell also had to have surgery on his hand to correct the fracture he suffered during the fight.
 {¶ 4} On June 20, 2005, Howell filed a battery claim against Wittman seeking compensatory and punitive damages as well as costs and attorney fees. Wittman answered and filed a counterclaim for trespass and assault arising out of the same circumstances.[1] The jury determined that Wittman was liable for battery and awarded Howell $6,000 in compensatory damages and $19,000 in punitive damages. The trial court's judgment entry awarded Howell costs as well, but provided that the court would hold a later hearing on the issue of attorney fees. *Page 3 
 {¶ 5} On July 25, 2007, Wittman filed his first notice of appeal. We ultimately dismissed that appeal on September 13, 2007 because the trial court had not yet issued a final, appealable order. Subsequently, the trial court held a hearing on the issue of attorney fees and issued another order, which awarded Howell damages, costs, attorney fees, and indicated there was no just cause for delay.
 {¶ 6} On October 10, 2007, Wittman filed his second notice of appeal.
Wittman's appeal is now properly before the Court and raises four assignments of error for our review.
 II Assignment of Error Number One "THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 7} In his first assignment of error, Wittman argues that the jury's verdict, awarding judgment to Howell, was against the manifest weight of the evidence. We disagree.
 ¶ 8 This Court applies the standard of review set forth in C.E. MorrisCo. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus, when analyzing a manifest weight argument in the context of a civil jury trial. Huntington Natl. Bank v. Chappell, 9th Dist. No. 06CA008979, 2007-Ohio-4344, at ¶ 4, citing State v. Wilson, 113 Ohio St.3d 382,2007-Ohio-2202, at ¶ 24. "Judgments supported by some competent, credible evidence going to all the essential elements of the case *Page 4 
will not be reversed by a reviewing court as being against the manifest weight of the evidence." Wilson at ¶ 24, quoting C.E. Morris at syllabus. When applying the aforementioned standard, a reviewing court "has an obligation to presume that the findings of the trier of fact are correct." Wilson at ¶ 24, quoting Seasons Coal Co., Inc. v.Cleveland (1984), 10 Ohio St.3d 77, 80-81. This is because the trier of fact is in the best position "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal,10 Ohio St.3d at 80. While "[a] finding of an error in law is a legitimate ground for reversal, a difference of opinion on credibility of witnesses and evidence is not." Id. at 81. Thus, in a civil manifest weight of the evidence analysis, a reviewing court may not simply "reweigh the evidence and substitute its judgment for that of the [trier of fact]." Wilson at ¶ 40. Compare State v. Thompkins (1997),78 Ohio St.3d 380, 387 (describing the reviewing court's role in analyzing a criminal manifest weight of the evidence argument as that of the "thirteenth juror").
 {¶ 9} To establish a claim for civil battery, a plaintiff must demonstrate that the defendant acted intending to cause a harmful or offensive contact and, in fact, a harmful contact resulted. Love v. PortClinton (1988), 37 Ohio St.3d 98, 99. A defendant possesses the requisite level of intent to commit a battery if he "`desires to cause [the] consequences of his act, or * * * believes that the consequences are substantially certain to result from it.'" Harasyn v. Normandy *Page 5 Metals, Inc. (1990), 49 Ohio St.3d 173, 175, quoting 1 Restatement of the Law 2d, Torts (1965), 15, Section 8A. "Contact which is offensive to a reasonable sense of personal dignity is offensive contact."Love, 37 Ohio St.3d at 99, citing 1 Restatement of the Law 2d, Torts (1965), 35, Section 19. See, also, Brooks v. Lady Foot Locker, 9th Dist. No. 22297, 2005-Ohio-2394, at ¶ 63.
 {¶ 10} Initially, we note that Wittman confines his argument to the jury's determination that he committed a battery on Howell. He does not argue that the jury erred in failing to recognize his claim of self defense, which if believed, would have justified any battery he engaged in and absolved him of liability. Since Wittman bears the burden on appeal, we decline to formulate such an argument and address it on his behalf. See State v. Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M. See, also, App.R. 16(A)(7); Loc.R. 7(B)(7). We confine our analysis solely to the issue of whether the jury's determination that Wittman committed a battery was against the manifest weight of the evidence. Consequently, if we find competent, credible evidence supporting each of the elements of battery, then we must affirm the jury's verdict. See Wilson, supra.
 {¶ 11} Howell testified that as he began to walk across Wittman's property, he heard someone, later determined to be Wittman, yelling obscenities and telling Howell to "[g]et off of my property." At that point, Howell turned around to exit the property the same way that he entered, but Wittman followed him. Howell further testified that when he stepped off the property and told Wittman to "calm *Page 6 
down," Wittman responded by throwing the beer bottle he was holding at Howell. Howell ducked to avoid the bottle, and Wittman kicked him in the groin. Wittman then proceeded to kick Howell repeatedly and punch him in the face. After Wittman's initial blows, Howell was able to hit Wittman back and take him to the ground. Howell fled after incapacitating Wittman.
 {¶ 12} Officer Eric Wood interviewed Howell shortly after his altercation with Wittman. Officer Wood testified that Howell's trial testimony was consistent with his initial statement. He further testified that on the night of his interview with Howell, he observed muddy boot prints on Howell's clothing, including on his groin area.
 {¶ 13} Wittman testified that he was sitting in a chair on his porch when Howell suddenly jumped on the porch and attacked him for no reason. Wittman admitted that he struck Howell, but claimed that he only did so to stop Howell from hitting him. He further claimed that he attempted to hold onto Howell until someone could call the police, but that Howell knocked him down to the ground and ran. He testified that he fell to the ground beside the porch, lay there for approximately ten minutes, finally dragged himself to his garage, and got in his truck. He claimed that, despite his concern for his injuries, he could not drive the truck anywhere because he lacked the capacity to drive it in his condition. Wittman admitted that he had just finished a beer before Howell allegedly attacked him, but he denied that he was drunk. He later admitted on cross examination that *Page 7 
he might have had up to four beers that day. Wittman denied that he ever yelled at Howell to "[g]et off [his] property" and insisted that the entire incident took place on and immediately around his porch area.
 {¶ 14} Officer Wood also testified about his interview with Wittman. He testified that Wittman's testimony differed substantially from his initial interview. When Officer Wood spoke with Wittman on the night of July 7, 2004, he observed that Wittman appeared "to be getting around okay[,]" but that he "might have [had] * * * a little bit too much to drink." Officer Wood explained that Wittman never mentioned Howell jumping on the porch or even that Howell went anywhere near Wittman's house during their altercation.
 {¶ 15} The record contains competent, credible evidence to support each of the elements of battery. Wittman caused offensive contact to Howell by kicking him repeatedly and punching him in the face. This supports the jury's determination that Wittman intended to cause the consequences of his act, which resulted in offensive contact. SeeHarasyn, 49 Ohio St.3d at 175 (adopting the restatement's definition of battery). On appeal, Wittman only argues that Howell's version of the events is not credible. Yet, the trier of fact was in the best position to determine the credibility of Howell's witnesses and his evidence. SeeWilson at ¶ 24. Having concluded that the record contains competent, credible evidence on each of the elements of battery, we cannot conclude that the jury lost *Page 8 
its way merely because it found Howell's witnesses more credible. Wittman's first assignment of error lacks merit.
 Assignment of Error Number Two "THE GRANT OF PUNITIVE DAMAGES WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 {¶ 16} In his second assignment of error, Wittman argues that the jury's award of punitive damages was not supported by sufficient evidence. Specifically, he argues that the record lacks any evidence that he acted with actual malice towards Howell. We disagree.
 {¶ 17} "In reviewing an award of damages, an appellate court does not reweigh the evidence, but rather determines whether the lower court's award was supported by any competent and credible evidence." Weber v.Obuch, 9th Dist. No. 05CA0048-M, 2005-Ohio-6993, at ¶ 39, citing Day v.Clifford (Aug. 24, 1993), 4th Dist. No. 499, at *7. "An award of punitive damages in a tort case may be made only upon a finding of actual malice on the part of the defendant." Niskanen v. Giant Eagle,Inc., 9th Dist. No. 23445, 2008-Ohio-1385, at ¶ 38, citing Calmes v.Goodyear Tire Rubber Co. (1991), 61 Ohio St.3d 470, 473. "`Actual malice' for these purposes is `(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.'" (Emphasis omitted.) Calmes, 61 Ohio St.3d at 473, quoting Preston v.Murty (1987), 32 Ohio St.3d 334, syllabus. *Page 9 
 {¶ 18} Our review of the evidence leads us to conclude that the jury's punitive damage award was based on sufficient evidence. Howell testified that Wittman was the initial aggressor, followed Howell off the property when he attempted to retreat, threw a beer bottle at him, and repeatedly kicked him and punched him in the face when he ducked. Arnold Lackey, a neighbor of Wittman's, testified that juveniles had vandalized both his and Wittman's house several times before this incident. Thus, the jury could have concluded that Wittman, thinking Howell was another juvenile vandal, sought to exact revenge upon him. See Calmes,61 Ohio St.3d at 473 (listing a spirit of revenge as one state of mind under which a jury may find actual malice). Moreover, the jury's interrogatory indicates that all eight jurors found that Wittman "acted willfully and maliciously in causing [Howell's] injury[.]" We find that the record contains competent, credible evidence in support of the jury's award of punitive damages to Howell. Wittman's second assignment of error is overruled.
 Assignment of Error Number Three "THE TRIAL COURT ERRED IN AWARDING ATTORNEY FEES."
 {¶ 19} In his third assignment of error, Wittman argues that the trial court erred in awarding Howell attorney fees. Wittman's sole argument is that the trial court's attorney fees award is inextricably linked to the jury's punitive damages award and must fail once this Court determines that the punitive damages award is based on insufficient evidence. Having already concluded that the jury's punitive *Page 10 
damage award was based on sufficient evidence, we cannot conclude that the trial court erred in awarding Howell attorney fees. Wittman's third assignment of error is overruled.
 Assignment of Error Number Four "THE TRIAL COURT ERRED IN AWARDING COSTS."
 {¶ 20} In his final assignment of error, Wittman argues that the trial court erred in awarding costs to Howell. Specifically, he argues that Civ.R. 54(D) does not permit a trial court to award any of the costs that the court below deemed reasonable and awarded to Howell.
 {¶ 21} On June 27, 2007, two days after the jury's verdict, the trial court issued a journal entry awarding Howell damages as well as costs. On September 18, 2007, the trial court held a hearing on the issue of attorney fees. At this hearing, Howell's counsel presented the court with an affidavit of hours worked as well as an exhibit itemizing all of the costs that he was seeking. Howell's counsel testified at the hearing and indicated that he believed the trial court had discretion to award the costs he sought in addition to any award of attorney fees. Wittman did not object to the admission of Howell's exhibit outlining his costs, nor did he object to Howell's counsel's statement that he believed the trial court had discretion to award those costs. In its September 21, 2007 journal entry, the trial court awarded Howell all of the costs listed in his exhibit for a total award of $5,893.27. Wittman argues that the trial court erred in awarding Howell costs *Page 11 
because nothing in the transcript demonstrates that they were necessary or vital to the litigation. He further argues that several of the items the trial court awarded can never be awarded as costs.
 {¶ 22} We do not reach the merits of Wittman's argument because he has forfeited all but plain error on appeal and has failed to address plain error in his brief. See Stefano Associates, Inc. v. Global LendingGroup, Inc., 9th Dist. No. 23799, 2008-Ohio-177, at ¶ 18 ("It is axiomatic that a litigant who fails to raise an argument in the trial court forfeits his right to raise that issue on appeal."). At the September 18, 2007 hearing before the trial court, Wittman did not raise any objection with regard to the issue of costs. He did not take issue with the court's June 27, 2008 order indicating that it was awarding costs to Howell, nor did he object to the admission of Howell's exhibit outlining his costs. At the end of the hearing, Wittman specifically renewed his objection as to the issues of attorney fees, punitive damages, and to the verdict in its entirety. However, he made no mention of the issue of costs.
 ¶ 23 In civil cases, the application of the plain error doctrine is reserved for the rarest of circumstances. See Goldfuss v. Davidson
(1997), 79 Ohio St.3d 116, syllabus. Moreover, we will not engage in an analysis of plain error if an appellant fails to argue plain error on appeal. Conti v. Spitzer Auto World Amherst, Inc., 9th Dist. No. 07CA009121, 2008-Ohio-1320, at ¶ 8. Since Wittman forfeited his argument with regard to costs and has not argued plain error on *Page 12 
appeal, we decline to address his argument on the merits. Wittman's fourth assignment of error lacks merit.
 III {¶ 24} Wittman's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 13 
Costs taxed to Appellant.
SLABY, P. J., DICKINSON, J., CONCUR.
[1] Wittman's counterclaim is not a part of this appeal. *Page 1